**For Publication**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA**

In re:                          )
                                )
THU THI DAO,                    )   Case No. 20-20742-C-7
                                )
                Debtor.         )   Dkt. Control No. DNL-2
                                )

**OPINION REGARDING STATUS OF AUTOMATIC STAY**

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

Bankruptcy Code provisions that apply in chapters 7, 11, and 13, should be interpreted to avoid dysfunction in all applicable chapters. That precept has been neglected in chapter 13 decisions holding that the 11 U.S.C. § 362(c)(3) 30-day automatic stay termination "with respect to the debtor" who files serial cases also, by inference, extends to "property of the estate." This needless inference works havoc in chapter 7.

This is no minor matter because stripping the estate of stay protection contradicts the central chapter 7 policy of maximum and equitable distribution for creditors, for which the § 362(a) stay of acts against property of the estate is a key tool.

Much ink has been spilled in chapter 13 cases, without attending to chapter 7, over the question whether § 362(c)(3) 30-day stay termination inferentially strips the automatic stay from property of the estate. The circuits are divided. The majority (50+ cases), now led by the Fifth Circuit, says the stay does not terminate with respect to property of the estate. E.g., Rose v. Select Portfolio Serv'g, Inc., 945 F.3d 226 (5th Cir. 2019), petition for cert. filed, (U.S. Feb. 20, 2020)(No. 19-1035). The

1  minority (20+ cases), led by the First Circuit, says the stay

2  ceases to protect property of the estate.  E.g., Smith v. Me.

3  Bur. of Rev. Servs. (In re Smith), 910 F.3d 576 (1st Cir. 2018).

4      Although the Ninth Circuit has not ruled, its Bankruptcy

5  Appellate Panel has sided with the minority.  Reswick v. Reswick

6  (In re Reswick), 446 B.R. 362 (9th Cir. BAP 2011).

7      The chapter 7 trustee, pursuant to the personal property

8  provisions of 11 U.S.C. § 362(h)(2), and fearing Reswick, asks

9  this court to assure the automatic stay continues unabated.  He

10  believes unscheduled assets exist that need protection.

11      This court is granting the § 362(h)(2) motion so as to

12  preserve the automatic stay with respect personal property of the

13  estate of the individual debtor and denying it as unnecessary as

14  to real property as § 362(c)(3) does not end its stay protection.

15      The factual setting enables contrasts among the chapters to

16  which § 362(c)(3) applies and between § 362(c)(3) and § 362(h),

17  revealing that § 362(c)(3) does not modify or affect § 362(c)(1).

18

19                              Facts

20      The self-represented debtor filed chapter 7 case No. 20-

21  20166-A-7 on January 13, 2020, which case was dismissed on

22  January 31, 2020, for failure timely to file schedules.

23      The debtor filed this case on February 10, 2020.  Some of

24  the required schedules and statements have been filed, but not

25  the Statement of Intention required by § 521(a)(2).

26      The manner in which documents have been prepared invites

27  questions about whether there has been full, candid, and complete

28  disclosure of all of the debtor's financial affairs.  Moreover,

                              2

1    there is no clear delineation among real and personal property.

2        The trustee has identified potential interests in properties
3    associated with the debtor's name that do not appear to have been
4    included on the schedules.

5        The trustee filed on March 11, 2020, the "Trustee's Motion
6    to Extend the Automatic Stay as to All Creditors and Order
7    [Debtor] to Deliver Collateral to the Trustee" under § 362(h)(2),
8    asserting that there is personal and real property of the estate
9    that is of consequential value or benefit to the estate that must
10   be delivered to the trustee.

11       Although § 362(h)(1) stay termination applies only to
12   "personal property of the estate" upon failure to file a timely
13   statement of intention within the 30 days specified by
14   § 521(a)(2)(A), the trustee, by also including real property in
15   the motion, was worried that <u>Reswick</u> could terminate the stay
16   regarding real property.

17       In the procedural posture of the case, the allegations
18   regarding unscheduled assets are accepted as true.

19

20                          <u>Jurisdiction</u>

21       Subject-matter jurisdiction is based on 28 U.S.C. § 1334(a).
22   A trustee's motion to preserve the automatic stay concerns
23   estate administration and is a core proceeding that a bankruptcy
24   judge may hear and determine.  28 U.S.C. § 157(b)(2)(A).

25

26                           <u>Analysis</u>

27       Analysis begins with the § 362(c)(3) controversy, notes the
28   dysfunction resulting in chapter 7 from stay termination for

                                3

1  property of the estate, contrasts § 362(c)(3) with § 362(h), and

2  looks through the prism of an exemplar scenario.

3

4                                    I

5      It is axiomatic that the automatic stay protects multiple

6  interests.  At a minimum there is the interest of the estate and

7  the interest of the debtor.  Property may be simultaneously

8  property of the estate and property of the debtor.  <u>Cf</u>. <u>Schwab v.</u>

9  <u>Reilly</u>, 560 U.S. 770, 782-85 (2010) (interest of estate and

10  debtor in exempt property).  Thus, in stay relief matters, courts

11  commonly address those interests separately and may grant relief

12  as to one or the other or both.

13

14                                   II

15     The controversy that has arisen predominately in chapter 13

16  cases, and usually without reference to chapter 7, is whether the

17  phrase "shall terminate with respect to the debtor" in

18  § 362(c)(3)(A) should be construed implicitly to extend to the

19  "estate," hence to "property of the estate," even though neither

20  "estate" nor "property of the estate" appears in § 362(c)(3):

21           (3) if a single or joint case is filed by or against a
             debtor who is an individual in a case under chapter 7, 11,
22           or 13, and if a single or joint case of the debtor was
             pending within the preceding 1-year period but was
23           dismissed, other than a case refiled under a chapter other
             than chapter 7 after dismissal under section 707(b) --
24                (A) the stay under subsection (a) with respect to
             any action taken with respect to a debt or property
25           securing such debt or with respect to any lease <u>shall</u>
             <u>terminate with respect to the debtor</u> on the 30th day
26           after the filing of the case;

27  11 U.S.C. § 362(c)(3)(A).

28

                                     4

The majority says § 362(c)(3) is not ambiguous and that extending stay termination to the estate and property of the estate is a bridge too far that offends "plain language" that threatens to read § 362(c)(1) out of the statute. The minority finds ambiguity and reasons that inferring such an extension is consistent with the Congressional purpose of thwarting bad-faith manipulations of bankruptcy.

It is puzzling that the debaters, particularly the minority, ignore the chapter 7 implications of their chapter 13 rulings regarding § 362(c)(3). From the chapter 7 perspective, inferentially extending stay termination to property of the estate amounts to throwing the baby out with the bath water.

A

Anomalies emerge from reading the competing chapter 13 decisions.

First, while paying lip service to strictures to attend to the entire statutory text and the broader context of the statute, chapter 13 tunnel vision manifests itself by way of disregard of how § 362(c)(3) applies in chapter 7.

Second, when focusing on subsection (A), the decisions disregard the contextual implications of subsections (B) and (C) and, in particular, disregard implications of those subsections for chapter 7 trustees.

Third, there is no consideration of the contrasting provisions of § 362(h) terminating the stay for certain personal "property of the estate" as to which Congress was explicit in the same Act of Congress that created § 362(c)(3).

1    Nor is there reasoned explanation of how § 362(c)(3) meshes
2    with the § 362(c)(1) property of the estate indefinite duration.
3
4                                    B
5        Exacerbating the analytical flaws is a distortion created by
6    the fact that chapters 11 and 13 feature debtor in possession
7    provisions that do not exist in chapter 7.  11 U.S.C. §§ 1115(b)
8    & 1306(b).
9        If the purpose of Congress was to thwart manipulative
10   debtors, then it is easy to succumb to the temptation also to
11   thwart their management of property of the estate.
12       But, what may seem a benign check on shifty chapter 13
13   debtors turns malignant in chapter 7 where trustees, not debtors,
14   always control property of the estate and have a duty to maximize
15   its value.  11 U.S.C. § 704(a)(1).
16
17                                    C
18       Any convincing analysis of the effect of § 362(c)(3) on
19   property of the estate, in addition to overcoming its
20   contradiction of § 362(c)(1), must take into account how
21   § 362(c)(3) applies in chapter 7 cases where debtors never are in
22   possession of property of the estate.
23       Convincing analysis of § 362(c)(3) would also explain why
24   Congress chose not to use in § 362(c)(3) the language it used in
25   the same Act of Congress in the parallel provision at § 362(h)
26   expressly terminating the stay protecting secured personal
27   property of the estate in specified circumstances in a manner
28   that meshed perfectly with § 362(c)(1):  "the stay provided by

1  subsection (a) is terminated with respect to personal property of

2  the estate or of the debtor securing in whole or in part a claim

3  ... and <u>such personal property shall no longer be property of the</u>

4  <u>estate</u>."  11 U.S.C. § 362(h)(1) (emphasis supplied).

5      Similarly, convincing analysis must explain how

6  § 362(c)(3)(C) functions for a chapter 7 trustee, who, if

7  property of the estate loses stay protection per § 362(c)(3)(A),

8  would be subjected to an impossibly short deadline to prove by

9  "clear and convincing evidence" that the chapter 7 case was filed

10  in good faith even though chapter 7 does not have a good faith

11  filing requirement.[1]

12      A review of how § 362(c)(3) would apply in chapter 7 exposes

13  the absurdity of extending § 362(c)(3) to property of the estate.

14      Nor is the inclusion of chapter 7 in § 362(c)(3) a sideshow;

15  rather, chapter 7, which comprises 60 percent of all bankruptcy

16  filings, is the main event.  It is the chapter 13 decisions that

17  amount to tail wagging dog.[2]

18

19                              III

20      The background behind § 362(c)(3) was the abuse perceived in

21  the stratagem of some consumer debtors using repetitive filings

22  of bankruptcy cases to exploit the automatic stay as a delay

23  tactic invoked on the eve of a foreclosure or an eviction without

24  ———————————

25      [1]<u>See</u> <u>Marrama v. Citizens Bank</u>, 549 U.S. 365, 374-75 & n.11

26  (2007) (Debtor's bad faith chapter 7 case filing leads to
   forfeiture of right to convert from chapter 7 to chapter 13).

27      [2]2019 Annual Report of U.S. Courts, Table F-2 (Bankruptcy
   cases commence – 12-Month Period Ending March 31, 2019).  Total

28  all chapters: 772,646.  Chapter 7: 477,106 (61.75%).  Chapter 11:
   6,891 (.009%).  Chapter 13: 288,039 (37.03%).

actually intending to complete the bankruptcy process.

Read as a whole, § 326(c)(3),[3] with its sub-, subsub-, and

_____

[3]The full text of § 362(c)(3) is:

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) --
(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease <u>shall terminate with respect to the debtor</u> on the 30th day after the filing of the later case;
(B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and
(C) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary) —
(i) as to all creditors, if —
(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to —
(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
(bb) provide adequate protection as ordered by the court; or
(cc) perform the terms of a plan confirmed by the court; or
(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later

8

subsubsub-sections is a 489-word provision designed to forestall serial filings intended to delay foreclosures or evictions.

A

Legislative history is of little use in construing the language "with respect to the debtor" in subsection (A), but the intellectual history of the genesis of § 362(c)(3) is helpful to understanding what Congress was talking about.

The serial filing problem was mainly a chapter 13 issue because chapter 13 debtors may dismiss a case as of right, only to file another case, triggering another automatic stay. 11 U.S.C. § 1307(b). To be sure, the stratagem also worked in chapter 7. The debtor would file a case, default in chapter 7 duties to pay fees and file schedules, suffer dismissal of the case after 30 or 60 days, and then file anew.

In 1997, the National Bankruptcy Review Commission flagged repeat filings as a chapter 13 problem and suggested limiting the automatic stay so as to discourage nonmeritorious petitions filed

---

case will be concluded —
                    (aa) if a case under chapter 7, with a discharge; or
                    (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and
          (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor;

11 U.S.C. § 362(c)(3).

merely to stay foreclosure sale or eviction.[4]

In 1998, the House and Senate Judiciary Committees proposed language that eventually became the basis for enactment of § 362(c)(3) in the Bankruptcy Abuse and Consumer Protection Act of 2005  Pub. L. 109-8, § 302, 119 Stat. 23 (Apr. 20, 2005); see H.R. Rep. No. 105-540, at 80 (1998) (H.R. 3150, 105th Cong. § 121); S. Rep. No. 105-253, at 39 (1998)(S. 1301, 105th Cong. § 303)("Bankruptcy Amendments of 2005").

One would expect that the language would have been refined during the usual legislative process to eliminate ambiguities in proposed § 362(c)(3).  But the legislative process leading to the 2005 Bankruptcy Amendments was anything but ordinary.

Nothing in the Congressional materials indicates that there was any thought given to whether proposed § 362(c)(3) would affect a chapter 7 trustee.

The paucity of Congressional materials results from the history of the 2005 Bankruptcy Amendments.  The bill that was enacted was pending in Congress from 1998 until 2005, with some early committee consideration before 2000.  For a number of years it was stalled in a highly-partisan environment by various issues unrelated to serial filings.  No amendments in the nature of technical corrections or refinements were entertained.

At final passage in 2005 — a point at which one would expect comprehensive review — the legislation was placed under a "no amendment" decree by Congressional leadership.  H.R. Res. 211,

---

[4]It was particularly troublesome in the Central District of California.  Nat'l Bankr. Rev. Comm'n, Report (Oct. 20, 1997) § 1.5.5, p. 279 & nn. 732-33, available at https://govinfo.library.unt.edu/nbrc/report/08consum.pdf.

1   109th Cong. (2005); H.R. Rep No. 109-43 (2005).  This truncated

2   the legislative process.  <u>See</u> Susan Jensen, <u>A Legislative History</u>

3   <u>of the Bankruptcy Abuse Prevention and Consumer Protection Act of</u>

4   <u>2005</u>, 79 Aм. Bankr. L.J. 485, 518-566 & n.507 (2005).

5       Throughout, Congress was silent about the effect of the 30-

6   day termination provision of § 362(c)(3) on a chapter 7 trustee.

7       Bottom line: any reasoning premised on inferences of

8   Congressional intent is unusually untrustworthy.

9

10                                   B

11      The genesis of § 362(c)(3) suggests three alternative views

12  about its effect on a chapter 7 trustee in the context of

13  § 362(c), which deals exclusively with duration of stay.

14      The first possibility is that the drafters of § 362(c)(3)

15  were mindful of the separate stay duration status for "property

16  of the estate" under § 362(c)(1)[5] and the rights of a chapter 7

17  trustee and, by using the phrase "terminate with respect to the

18  debtor," were referring only to stay duration regarding the

19

20

21      [5]The text of § 362(c)(1) is:

22

23          (1) the stay of an act against property of the estate
            under subsection (a) of this section continues until such
24          property is no longer property of the estate.

25  11 U.S.C. § 362(c)(1).

26      Status as property of the estate may survive the closing of
    the case.  <u>Compare</u> 11 U.S.C. § 554(c), <u>with</u> <u>id</u>. § 554(d); <u>In re</u>
27  <u>Dunning Bros. Co.</u>, 410 B.R. 877 (Bankr. E.D. Cal. 2009)(case
    filed in 1935 reopened in 2009 to administer unscheduled asset);
28  <u>see also</u>, <u>First Nat'l Bank v. Lasater</u>, 196 U.S. 115,119 (1905)
    (Bankruptcy Act).

debtor under § 362(c)(2),[6] while taking care to preserve the stay with respect to the trustee's interest in property of the estate.

The second possibility is that Congress intended to strip chapter 7 trustees of automatic stay protection for property of the estate but chose not to say anything about it.

The third alternative is that Congress gave no thought to the issue of the trustee's rights in property of the estate.

1

The majority of § 362(c)(3) decisions align with the first possibility.

The majority reasons as follows:  (1) the language of § 362(c)(3)(A) is not ambiguous; (2) nowhere in § 362 does Congress use the phrase "with respect to the debtor" to encompass property of the estate; (3) Congress knew how to specify the "estate" and did not do so; (4) § 362(a) differentiates between acts against the debtor and acts against property of the estate; (5) construing "with respect to the debtor" as not applying to property of the estate is consistent with fundamental bankruptcy

_____

[6]With respect to the debtor, the stay expires per § 362(c)(2):

        (2) the stay of any other act [i.e. not property of the estate] under subsection (a) of this section continues until the earliest of —
           (A) the time the case is closed;
           (B) the time the case is dismissed; or
           (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

11 U.S.C. § 362(c)(2).

policy of obtaining a maximum and equitable distribution for
creditors; (6) enabling an oversecured creditor to appropriate to
itself equity above the creditor's security interest impairs the
ability of the trustee to pay a dividend to creditors.  Holcomb
v. Hardeman (In re Holcomb), 380 B.R. 813, 816 (10th Cir. BAP
2008) (chapter 13), cited with approval, Rose, 945 F.3d at 230;
accord, Rinard v. Positive Invs., Inc. (In re Rinard), 451 B.R.
12, 17 (Bankr. C.D. Cal. 2011) (chapter 7), cited with approval,
Rose, 945 F.3d at 230 n.10.

Of these majority cases, only Rinard presents a question
regarding a chapter 7 trustee concerned about stay protection for
property of the estate.

2

The minority of § 362(c)(3) decisions align with the second
possibility – that Congress intended to strip chapter 7 trustees
of automatic stay protection for property of the estate but not
say anything about it.

The reasoning goes as follows:  (1) § 362(c)(3)(A) is
ambiguous; (2) Congressional intent is determinative; (3) an
ensuing exegetical examination of legislative history yields a
conclusion that Congress probably meant to terminate protection
for property of the estate.  Smith, 910 F.3d at 589-91 (chapter
13); Reswick, 446 B.R. at 370-73 (chapter 13); In re Daniel, 404
B.R. 318, 327-29 (Bankr. N.D. Ill. 2009) (chapter 13, later
converted to chapter 7).

Swept under the carpet is the fact that Congress in the 2005
Amendments, at § 362(h), did expressly terminate the stay with

respect to certain personal property of the estate, using language stating "such personal property shall no longer be property of the estate." 11 U.S.C. § 362(h)(1). This meshes precisely with the § 362(c)(1) provision that "the stay of an act against property of the estate ... continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1).

The minority decisions neither mention nor attempt to explain the asymmetry between § 362(h) and § 362(c)(3).

Often, the procedural context for the issue at hand is 11 U.S.C. § 362(j).[7] There, a chapter 13 debtor, tainted by serial filer status, resists a creditor's motion for confirmation that the automatic stay has terminated by using the property of the estate argument as a pretext to resist foreclosure or eviction. Smith, 910 F.3d at 579 (§ 362(j)); Daniel, 404 B.R. at 320 (§ 362(j) in chapter 13 case, converted to chapter 7).

A § 362(j) motion typically is a two-party debtor-creditor dispute not involving the chapter 7 trustee in which the parties lack an incentive to make arguments characteristic of a trustee.

It is significant that none of the minority cases involve a chapter 7 trustee concerned about preserving stay protection for property of the estate.[8]

---

[7]The text of § 362(j) is:

> (j) On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

11 U.S.C. § 362(j).

[8]Daniel was a two-party debtor-creditor § 362(j) contest in a case filed under chapter 13 and later converted to chapter 7 in which contest the chapter 7 trustee did not participate. The

IV

The importance of property of the estate to chapter 7 cases warrants emphasis.

A

The first enumerated duty of a chapter 7 trustee is to "collect and reduce to money the property of the estate."  11 U.S.C. § 704(a)(1).[9]

Property of the estate, in general, is comprised of all legal or equitable interests of the debtor as of commencement of the estate, together with interests in property recovered by the trustee or preserved for the benefit of the estate, certain post-petition acquisitions, and proceeds, product, offspring, rents or profits of or from property of the estate.  11 U.S.C. § 541(a).

B

A crucial tool in the chapter 7 trustee's toolbox is the automatic stay.

The automatic stay arising in consequence of the filing of a petition initiating a bankruptcy case protects property of the

---

court ignored the chapter 7 problem with the comment, "The conversion has no effect on the issues raised by the bank's motion."  Daniel, 404 B.R. at 320 n.1.

[9]The full text of § 704(a)(1) is:

(a) The trustee shall —
     (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

11 U.S.C. § 704(a)(1).

estate from judgment enforcement, acts to obtain possession of property of the estate, and acts to create, perfect, or enforce a lien.  11 U.S.C. § 362(a).

The automatic stay of an act against property of the estate continues until such property is no longer property of the estate.  11 U.S.C. § 362(c)(1).

Unless the court orders otherwise, property scheduled in accordance with the debtor's duty to file schedules of assets and not otherwise administered at the time of closing of the case is abandoned and deemed administered, but unscheduled property that is neither formally abandoned nor administered remains property of the estate in perpetuity.  11 U.S.C. §§ 554(c)-(d); Lasater, 196 U.S. at 119; Dunning Bros. Co., 410 B.R. at 888.

It follows under § 362(c)(1) that the automatic stay remains in effect to protect property that remains property of the estate after the case is closed.

This post-closing continuation of the stay against acts against property of the estate has proved to be a vital tool for policing cheating and enforcing compliance with the requirement of disclosure of all interests in property wherever located and by whomever held.  11 U.S.C. § 541(a); Lasater, 196 U.S. at 119; Dunning Bros. Co., 410 B.R. at 888.

Acts in violation of the automatic stay are either void ab initio or voidable.  Compare, e.g., Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571-72 (9th Cir. 1992),and Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975-76 (1st Cir. 1997), with Jones v. Garcia (In re Jones), 63 F.3d 411, 412 (5th Cir. 1995).

1  All of this adds up to powerful protection for property of

2  the estate in chapter 7 cases.  This shield can be crucial in

3  enabling the chapter 7 trustee to perform the duty to collect and

4  reduce to money the property of the estate.

5  It would be extraordinary for Congress to have eviscerated

6  this fundamental protection for property of the estate without so

7  much as an explanatory comment.

8

9                              V

10  An essential tool for chapter 7 trustees in performance of

11  their duties is not likely to have been stripped away merely

12  because the debtor earlier filed a case that was not completed.

13  Yet, that is the gravamen of what the minority in the

14  § 362(c)(3) debate contends when it says the stay terminates with

15  respect to property of the estate in chapter 7 cases.  And, it

16  does so with zero analysis of how the chapter 7 trustee fits in.

17  They hold that § 362(c)(3) implicitly modifies § 362(c)(1).

18  Smith, 910 F.3d at 588-89.[10]  No mention is made of § 554(c),

19  § 554(d), or of the chapter 7 trustee.

20

21

22

23  [10]The First Circuit asserted, ex cathedra:

24  Specifically, under § 362(c)(1), the stay "continues until
    [estate] property is no longer property of the estate."  And

25  under § 362(c)(2), "the stay of any other act under
    subsection (a) continues until ... the case is closed" or

26  "the time the case is dismissed" or a "discharge is granted
    or denied."  These instructions are applicable only so long

27  as the stay has not otherwise lifted under § 362(c)(3)(A),
    or some other provision.

28
Smith, 910 F.3d at 589 (citations omitted, ellipsis in original).

Their answer is that the stay can be extended under § 362(c)(3)(B). <u>Smith</u>, 910 F.3d at 588.[11]  But no analysis is made of how a chapter 7 trustee could comply with the extension rules that feature an impossibly short deadline and a "clear and convincing" burden of proof.

VI

Issues of timing and proof become important when one focuses on the operational mechanics of how a chapter 7 trustee could comply with the extension rules to avoid 30-day stay termination if the minority is correct that the stay protecting property of the estate evaporates on the 30th day after case filing.

A

The timing required by § 362(c)(3)(B) is irretrievably at odds with chapter 7 process where a meeting of creditors need not occur until 60 days into the case.

---

[11]The First Circuit reasoned:

A second-time filer with a meritorious bankruptcy case, or a creditor whose self-interest dictates it, may get an extension of the stay on "demonstrat[ing] that the filing of the later case is in good faith as to the creditors to be stayed." § 362(c)(3)(B).  Notably, courts must act quickly on these requests; Congress provided that any hearing on a request for an extension must be "completed before the expiration of the 30-day period."  Section 362(c)(3)(B) reflects an attempt by Congress to ensure that certain second-time filers who meet an enhanced burden have an escape route from the termination of the entire automatic stay, including as to actions against estate property.

<u>Smith</u>, 910 F.3d at 588.

18

The § 362(c)(3)(B) motion to extend must be made in time for notice and a hearing that must be completed within 30 days after the filing of the case.  11 U.S.C. § 362(c)(3)(B).

That rigid 30-day post-filing deadline for completing a hearing on a § 362(c)(3)(B) request to preserve the stay contradicts basic chapter 7 procedure.

1

Until the debtor files the various required schedules and statements, a chapter 7 trustee knows only the names and addresses of the creditors, codebtors, and parties to executory contracts and unexpired leases that must be filed with the petition.  11 U.S.C. § 521(a); Fed. R. Bankr. P. 1007(a)(1).

The debtor is not required until the 14th day after filing a voluntary petition to file schedules of assets and liabilities, current income and expenditures, executory contracts and unexpired leases, statement of financial affairs, payment advices, record of interest in certain education accounts, statement of current monthly income on the prescribed Official Form.  11 U.S.C. § 521(a); Fed. R. Bankr. P. 1007(c).

The 14-day deadline may be, and often is, extended on motion for cause on notice to the United States trustee and the chapter 7 trustee.  Fed. R. Bankr. P. 1007(c).

The filing of those schedules and statements is the point at which a chapter 7 trustee begins to see the picture of the case.

Those who maintain that the stay protecting property of the estate evaporates on day 31 of a chapter 7 case do not explain how a chapter 7 trustee can be expected to meet the

1  § 362(c)(3)(B) deadline without having had a meaningful
2  opportunity to examine the schedules and statements.

3

4                              2

5      The next chapter 7 event is the meeting of creditors
6  pursuant to 11 U.S.C. § 341 at which the chapter 7 trustee and
7  creditors interrogate the debtor under oath and assesses whether
8  the case is likely to have assets, i.e. property of the estate,
9  sufficient to enable a dividend for creditors.

10     The United States trustee must call the meeting of creditors
11 "within a reasonable time after the order for relief."  11 U.S.C.
12 § 341(a).

13     As implemented by Rule 2003(a), § 341(a) "reasonable time"
14 in chapter 7 cases is no fewer than 21 days and not more than 60
15 days after the order for relief.  Fed. R. Bankr. P. 2003(a)

16     Those who contend that the stay protecting property of the
17 estate evaporates on day 31 of a chapter 7 case do not explain
18 how a chapter 7 trustee can be expected to meet the
19 § 362(c)(3)(B) deadline before the meeting of creditors is held.

20     The reality is that the timing is impossibly contradictory.

21

22                              B

23     The § 362(c)(3)(C) burden of proof for requests to preserve
24 the stay is impossible for a chapter 7 trustee to satisfy.

25     Proof and burden of proof under §§ 362(c)(3)(B) and (C)
26 would require a chapter 7 trustee to run a course of high hurdles
27 in order to preserve the stay.

28

1

If § 362(c)(3) applies to property of the estate, then the chapter 7 trustee would have to prove that the filing of the case was "in good faith as to the creditors to be stayed."  11 U.S.C. § 362(c)(3)(B).  But, the Bankruptcy Code does not require "good faith" for filing a chapter 7 case.[12]

How is a chapter 7 trustee at the outset of a case in a position to assess the good faith of the debtor?  If the trustee's suspicions about unscheduled property turn out to be correct, there will be substantial grounds to question the debtor's good faith.

So what?  Regardless of the debtor's good or bad faith, it is still a chapter 7 case with property of the estate controlled by a trustee who has a duty to collect and reduce to money the property of the estate.  11 U.S.C. § 704(a)(1).

2

Proving "good faith" begins with a statutory presumption that every subsequent case filed within one year after dismissal is "filed not in good faith."  11 U.S.C. § 362(c)(3)(C).

Rebutting the presumption of "filed not in good faith" must be by "clear and convincing evidence to the contrary."  11 U.S.C. § 362(c)(3)(C).

---

[12]<u>Marrama</u>, 549 U.S. at 374-75 & n.11.  But, to be precise, "good faith" is not always irrelevant.  If a § 707(b) motion to dismiss the case as a substantial abuse of chapter 7 is made, factors for the court to consider include "whether the debtor filed the petition in bad faith," along with "totality of the circumstances."  11 U.S.C. § 707(b)(3).

Viewing the remaining requirements of § 362(c)(3)(C)(i) so as to enable the trustee to sidestep some of the statutory hurdles, the chapter 7 trustee would still need to prove by clear and convincing evidence that the chapter 7 case "will be concluded ... with a discharge." § 362(c)(3)(C)(i)(III)(aa).

An internal contradiction emerges. Requiring the chapter 7 trustee to prove by clear and convincing evidence that the case will be concluded with a chapter 7 discharge conflicts with the trustee's statutory duty "if advisable" to "oppose the discharge of the debtor." 11 U.S.C. § 704(a)(6).

If the trustee's suspicions about this case are borne out, there is a nontrivial chance that the trustee actually will successfully oppose the discharge of the debtor.

Indeed, this court's order under § 362(h)(2) will direct the debtor to deliver to the trustee personal property collateral in the debtor's possession. Noncompliance with any such order is an independent ground to deny discharge. 11 U.S.C. § 727(a)(6)(A).

There is a canon against construing a statute to achieve absurd results. Extending "against the debtor" in § 362(c)(3) to encompass the chapter 7 trustee's interest in "property of the estate" is Exhibit A for absurdity.

## VII

Contrast with § 362(c)(3) the regime created by its cousin at § 362(h)(2) relating to stay termination regarding personal property of the estate in chapter 7 cases, which affords a chapter 7 trustee a reasonable opportunity to preserve the stay.

If certain conditions regarding debts secured by personal property of the estate are not satisfied by the debtor in chapter 7 cases, then "the stay provided by subsection (a) is terminated with respect to personal property of the estate ... and such personal property shall no longer be property of the estate." 11 U.S.C. § 362(h)(1) (emphasis supplied).[13]

The trustee, however, may prevent stay termination by persuading the court that the subject personal property is of consequential value or benefit to the estate and providing adequate protection of the secured interest. 11 U.S.C. § 362(h)(2).[14]

_____

[13]Section 362(h)(1) provides:

(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) —
(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h)(1).

[14]Section 362(h)(2) provides:

The touchstone in § 362(h) is § 521(a)(2) regarding a duty of individual chapter 7 debtors requiring a Statement of Intention regarding retention or surrender of secured property. 11 U.S.C. § 521(a)(2).[15]

The first thing to note is that, by the terms of

---

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee.  If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

11 U.S.C. § 362(h)(2).

[15]Section 521(a)(2) provides:

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate —
(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and
(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;
Except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

11 U.S.C. § 521(a)(2).

1  § 521(a)(2), unscheduled property is not affected by § 362(h) and
2  is not at risk of loss of stay protection.

3      Next, the timing for a chapter 7 trustee to act, which
4  derives from the deadlines imposed by § 521(a)(2), is
5  considerably more flexible than § 362(c)(3).  If the debtor has
6  filed the requisite Statement of Intention, which typically is
7  included in the package of schedules and statements, the
8  § 521(a)(2) deadline will not be until 30 days after the first
9  date set for the meeting of creditors, and the trustee has an
10 opportunity to obtain an extension.

11     The § 362(h)(2) burden of proof is likewise more forgiving
12 than § 362(c)(3).  Instead of "clear and convincing evidence," a
13 chapter 7 trustee need only persuade the court, that the subject
14 personal property is of consequential value or benefit to the
15 estate and that adequate protection is being provided.  If so
16 persuaded, the court grants the motion and orders the debtor to
17 deliver personal property in the debtor's possession to the
18 trustee.  11 U.S.C. § 362(h)(2).

19
20                              VIII

21     _Rinard_ provides an illustration of how value could sneak out
22 the door if § 362(c)(3) were to extend to property of the estate
23 in a chapter 7 case.

24     As with the present case, _Rinard_ began with a chapter 7 case
25 that was dismissed on day 21 for missing the deadline to file
26 schedules and was followed 15 days later with a second chapter 7
27 case in which schedules were filed timely.

28

                                25

Property of the estate included the surplus value in real property.  More than 30 days after the filing of the second case, California nonjudicial foreclosure proceedings were commenced with respect to a debt of $889,000.00 secured by a property valued at $1,500,000.00.  In other words, there was surplus value potentially in excess of $610,000.00.

The court, agreeing with the majority view and declining to follow Reswick, ruled that the § 362(c)(3)(A) 30-day stay termination did not extend to property of the estate and that the subject property remained property of the estate that the chapter 7 trustee could liquidate.  Rinard, 451 B.R. at 14-20.[16]

Among other things, it noted that the foreclosing creditor could obtain a windfall by way of obtaining title through a nonjudicial foreclosure at the expense of other creditors if the chapter 7 trustee was not able to administer the subject property.  Rinard, 451 B.R. at 20.

Noting that the opportunity for a windfall would incentivize a creditor race to the courthouse that bankruptcy is designed to obviate, the Rinard court reasoned the ensuing race would contravene key premises of federal bankruptcy law favoring a

---

[16]Rinard did not, and was not required to, follow the BAP Reswick decision, which suffers from tunnel vision defects including disregard of chapter 7 and of §§ 362(c)(1) & (h). Rinard, 451 at 20-21.  In appeals before it, the Ninth Circuit BAP follows its own precedents so as to promote consistency. Thus, appellants facing adverse BAP precedent often elect to route appeals through the District Court, which is not bound by the BAP.  The reason that BAP decisions are de facto influential, even though not de jure controlling, is that the Court of Appeals and District Courts often agree with and adopt BAP analysis. This reality dictates sobriety when bankruptcy judges question BAP precedents.  Nonetheless, as Reswick shows, the BAP is fallible.  Rinard is correct.

fresh start for an honest debtor and equal treatment among
classes of creditors.  <u>Rinard</u>, 451 at 19.

IX

Is there a way to harmonize the chapter 13 minority view
with chapter 7?  Not really.

One might attempt to draw a distinction between property of
the estate under the control of a chapter 7 trustee and property
of the estate under the control of a debtor in possession in
chapter 11 or 13.  But such an effort seems doomed to create more
problems than it resolves.

A

A basic problem is that a firm boundary between chapter 7
and chapters 11 and 13 cannot be drawn.  Every chapter 11 and 13
case has the potential to be converted to chapter 7 by court
order.  Upon conversion, a chapter 7 trustee would come into
control of property of the estate.

If the stay has previously been terminated under § 362(c)(3)
with respect to property of the estate, then the trustee would
still have been shorn of a key tool going forward.  Moreover, any
stay-violating activity that may have occurred between the date
of the § 362(c)(3) 30-day termination and the subsequent
conversion would be more difficult to correct.

B

It may be objected that it is inconvenient, once the stay
has terminated "with respect to the debtor," for a creditor to

need to overcome the stay protecting property of the estate.

Congress answered that objection by creating, in tandem with § 362(c)(3), a remedy in the form of the § 362(j) motion to confirm that the automatic stay has terminated. In chapter 11 and 13 cases in which the debtor is in possession, the § 362(j) motion enables the court to police whether any argument by the debtor based on property of the estate is a mere pretext.

In chapter 7 cases, trustees may stipulate to stay relief or to abandonment of property that is burdensome or of inconsequential value and benefit to the estate so as to avoid needless expense.[17]

### Conclusion

The phrase "shall terminate with respect to the debtor" in § 362(c)(3) cannot be construed by inference to extend to "with respect to the estate and property of the estate" because the consequences in chapter 7, to which § 362(c)(3) also applies, are so far at odds with basic chapter 7 administration that Congress would not have intended such dramatic consequences without unambiguous explanation.

The putative safety valve at §§ 362(c)(3)(B) and (C) establishes a regime in terms of time and proof that is impossible for a chapter 7 trustee to satisfy.

---

[17]There is no filing fee for a stipulation for court approval of an agreement for relief from a stay or for a trustee's Fed. R. Bankr. P. 6007(a) notice of proposed abandonment. 28 U.S.C. § 1930, Bankruptcy Ct.Misc. Fee Schedule, Item 19 (Sept. 1, 2018).

1    Congress well knew how to terminate the automatic stay with
2    respect to property of the estate and, actually did so in plain
3    language at § 362(h), which was enacted as part of the same Act
4    of Congress that enacted § 362(c)(3).

5    The safety valve at § 362(h)(2) is tailored to the needs of
6    a chapter 7 trustee.

7    The asymmetry between § 362(c)(3) and § 362(h) further
8    confirms that Congress did not intend the phrase "with respect to
9    the debtor" to sweep in the estate and property of the estate.

10   An appropriate order will issue granting the chapter 7
11   trustee's § 362(h)(2) motion regarding personal property of the
12   estate and denying the relief requested regarding real property
13   because § 362(c)(3) does not terminate the automatic stay
14   protecting property of the estate.

16   Dated: May 11, 2020

        _____
        United States Bankruptcy Judge